# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINH DAMNGAM,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 1:12-cv-00362-BAM<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

## I.  INTRODUCTION

Plaintiff Sinh Damngam ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") that as of January 9, 2008, Plaintiff ceased to be eligible for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act").[1]  The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe.  The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, the Court affirms the Commissioner's determination.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

## II.  BACKGROUND

**A.  Overview of Administrative Proceedings**

In 1996, the Commissioner found that Plaintiff became disabled in 1993. AR 26-35.[2] Plaintiff was found disabled at a redetermination in 2001. AR 37-41, 45-49. In September 2008, the agency found that Plaintiff ceased to be disabled as of January 9, 2008. AR 42-44, 59-81. Plaintiff challenged this finding. Plaintiff appeared with an attorney and testified through a Lao interpreter on March 4, 2010 before Michael Haubner, administrative law judge ("ALJ"). AR 382-407. On May 14, 2010, the ALJ issued a decision finding that Plaintiff had not met his burden to show he remained disabled after January 9, 2008. The Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner.

**B.  Plaintiff's Background and Testimony**

Plaintiff was born in Laos in 1957. AR 392. According to a history provided in 2009, Plaintiff attended one year of school, became a monk, and was enlisted into the Laotian army. AR 316. In 1978, Plaintiff came to the United States with his wife and child. *Id.* Plaintiff now has five children. AR 255. Plaintiff worked baking bread in New York from 1980 to 1988, and moved to Fresno, California in 1989. *Id*. Plaintiff began receiving Social Security benefits in 1993.

At the hearing, Plaintiff testified that he could speak and understand a little English, but at work he spoke Lao. AR 393. Plaintiff lived at home with his wife and a teenage child. *Id.* Plaintiff did not have a driver's license. *Id.* Plaintiff's alleged impairments were depression, PTSD, mood disorder, lower back pain, arthritis, and foot pain. *Id.* Plaintiff thought about suicide twice a week. AR 394. Plaintiff had headaches two days per week, at least since 1996. AR 395. Plaintiff could lift and carry ten pounds. AR 396. Plaintiff could sit for ten minutes and stand for ten minutes at a time. *Id.* Plaintiff could walk one block before needing to rest. *Id.* Plaintiff had difficulty concentrating; the longest he could pay attention was five minutes. *Id.* Plaintiff had to elevate his feet during the day, on average one hour in an eight hour day. *Id.* Plaintiff could brush his teeth, shave, put his clothes on, and shower. AR 397. Plaintiff could not cook, but could do simple food preparation, and did so once a day. *Id.* Plaintiff said he had never done dishes in his life, never

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

taken out the trash, and did not do other household chores. Plaintiff initially said he had never gone shopping in his life, but when pressed, he acknowledged shopping for clothes once a month. AR 400. Plaintiff denied going to a church or temple, though in June 2009 he told a provider he occasionally attended a Lao temple. AR 312. Each day Plaintiff watched three to four hours of TV. AR 401. Twice a week Plaintiff went to "adult day care" where he peddled or walked for ten minutes. AR 339, 401. Plaintiff said he had never used street drugs or alcohol and did not have a criminal history. AR 393.

Plaintiff's daughter, Vandsana Damngam, completed a third party function report on October 22, 2007. AR 163-170. She took Plaintiff shopping three times a week. Plaintiff went outside four to five times a day. Plaintiff watched television, swept the porch, raked leaves, and did light cleaning. These activities had not changed since Plaintiff's disability began. On the same date, Plaintiff completed a function report outlining similar activities. AR 155-62. The ALJ gave little weight to the daughter's report, characterizing it as non-specific, vague, and inconsistent with the medical opinions.

A daily activities questionnaire from 2001 stated that when claimant went out, he would drive. AR 129-35. In an interview from 2000, Plaintiff stated that he sometimes went fishing and driving. AR 119-28. Although Plaintiff no longer mentions fishing as an activity, AR 141-70, 384-407, his medical records show that he received a sport fishing license in July 2009. AR 361.

**C.     Medical Record**

The point of reference for deciding whether Plaintiff's health had improved was August 14, 2001, the most recent decision that Plaintiff was disabled. AR 37, 45, 368. Plaintiff was first found disabled in 1996 with arthritis and depression. AR 28. In 2001, a consultative psychiatrist also diagnosed him with PTSD and identified an alcohol problem. AR 250-53.

A note from October 2002 shows that Physician Assistant Bounmy Pinyasone had been treating Plaintiff since 1993. The note said that Plaintiff has depression, hyperlipidemia, impaired fasting glucose, and abnormal liver enzyme. It did not mention arthritis or low back pain. Plaintiff had "fatigue, poor concentration, and lack of interesting" [sic]. "He can't pay attention to do any work." AR 284. The ALJ found this note inconsistent with the medical evidence and gave it little

weight. Although it indicated some diagnoses, lab results, and symptoms, it did not quantify Plaintiff's RFC. It was not written by an acceptable medical source, and it touched on the question of whether Plaintiff could do "any work," which was reserved to the Commissioner. It made no mention of Plaintiff's alcohol addiction, which could have affected Plaintiff's liver condition and his concentration. This suggested that the author did not have a complete and accurate medical history.

In November 2007, Plaintiff saw Dr. Michiel, a board-certified psychiatrist, for a consultative psychiatric examination. AR 254-56. Plaintiff appeared well-dressed with good personal hygiene. He stated that he drinks alcohol until he gets drunk, and admitted that he had been arrested for a DUI. He stated that he could care for himself, shop, cook, and do household chores. He answered questions with a sarcastic attitude. Dr. Michiel diagnosed alcohol dependence and "alcohol induced mood disorder, depressed." He gave Plaintiff a current Global Assessment of Functioning ("GAF") rating of 65 to 70, reflecting mild persistent symptoms or mild difficulty in functioning.[3] He assigned Plaintiff the following mental Residual Functional Capacity ("RFC"): He could maintain attention and concentration and carry out simple job instructions, and he could relate and interact with coworkers, supervisors, and the general public, but he could not carry out an extensive variety of technical and/or complex instructions.

In December 2007, Plaintiff saw Dr. Steven Stoltz, M.D., a board certified internal medicine specialist, for a consultative physical examination. 257-62. Plaintiff mentioned pain, predominately of the upper back, both hands, and both feet, worse on the right than on the left. The pain came and went. He complained of pain mainly with reaching above his head with either arm. He denied alcohol use. The examination was normal except for a "somewhat exaggerated" limp on the right, apparently secondary to a callus on the right foot. Based on observations and the objective findings, Dr. Stoltz said he was "not really impressed" by the amount of callus on the foot. Plaintiff did not appear to have any spinal disease, inflammatory arthritis, or other neuropathies. His diagnostic impression was: 1. Pain syndrome, 2. Hypertension, 3. Psychiatric. He also said he did not feel that Plaintiff had any medical cause to limit his work-related activities.

---

[3] The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment, from 1 to 100, of the individual's overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 2000) ("DSM IV").

Also in December 2007, state agency medical consultants prepared a psychiatric review technique form. AR 268-78. The form noted an alcohol dependence disorder, moderate limitations in activities of daily living, maintaining, social functioning, and maintaining concentration, persistence, or pace; and no episodes of decompensation. *Id*. A mental RFC assessment form from the same date indicated that with alcohol dependence, Plaintiff had moderate limitations in many areas and could not sustain simple repetitive tasks, relate appropriately to others, or adapt to work situations. AR 263-65. The state agency consultant medical improvement related to the ability to work. AR 266-67. Memory, attention and concentration were intact. *Id.* His activities of daily living showed he could care for his personal needs, shop, cook, and do household chores. *Id.* He could do simple, repetitive tasks. His physical health showed no residual defects. *Id.*

In July 2008, state agency medical consultants again reviewed the record and completed another psychiatric review technique form. AR 301-11. They found a depressive disorder and an alcohol dependence disorder. *Id*. They found no limitation in activities of daily living; mild limitation in maintaining social functioning; moderate limitation in maintaining concentration, persistence or pace; and insufficient evidence of any episodes of decompensation. *Id.* A mental RFC assessment from the same date indicated that Plaintiff was moderately limited only in the ability to understand, remember, and carry out detailed instructions. AR 295-97. Taking into account Dr. Michiel's examination, the state agency consultant concluded that Plaintiff's mental state was much improved since 2001, the date he was last found disabled. AR 298-300. He could do simple, repetitive, routine tasks on a sustained basis. *Id.* His activities of daily living were unimpaired despite his alcohol dependence. *Id.* There were no significant findings showing that Plaintiff's physical impairments would have more than minimal effect on functioning. *Id.*

The records of Dr. Vang Mouanoutoua, Ph.D., contain a psychological assessment and plan of care from January 2009 indicating that Plaintiff was depressed and should receive individual and group support services. AR 314-17. In June 2009, a reassessment by Joan Murphy, RN, LCSW states that Plaintiff reported "depressed feelings all day every day." AR 313. There are no notations in the record discussing disability or regarding a functional capacity assessment.

On February 23, 2010, x-ray studies were ordered for complaints of back and right foot pain. AR 323-36; AR 357. The lumbar spine, right tibia and fibula, and right foot all showed either no significant degenerative changes or were simply negative. The thoracic spine showed a "slight right convex curvature" while recumbent. However, vertebral height was maintained, endplates appeared intact, no degenerative changes were seen, and the thoracic spine was "otherwise negative." *Id*.

On March 1, 2010, Dr. Nicholas J. Orme, M.D., completed a medical source statement. AR 327-28. He stated that Plaintiff had severe PTSD and major depression for several years, and had a poor response with multiple medications. *Id*. The ALJ gave this opinion little weight. The ALJ observed that this opinion was based largely on Plaintiff's stated symptoms over several years. AR 21, 328. The ALJ also noted Dr. Orme had only seen Plaintiff for eight months, and failed to mention Plaintiff's longstanding alcohol problem. AR 21. The ALJ felt that this opinion was therefore reached without a complete and accurate history and not consistent with the record as a whole. AR 21.

**D.     Testimony of Vocational Expert**

Cheryl Chandler, an impartial vocational expert, stated that Plaintiff had no relevant past work. She then assumed a person of Plaintiff's age, education, and work history, and considered hypotheticals involving this person's RFC. *Cf.* 20 C.F.R. §404.1560(c)(1).

The first RFC was based on the set of limitations ultimately credited by the ALJ, those described in the psychiatric evaluation of Dr. Michiel. AR 254-56, 403. The person could maintain attention and concentration and carry out simple instructions; could relate and interact with coworkers, the supervisors, and the public; but could not carry on an extensive variety of technical and/or complex instructions. Ms. Chandler stated that the person could do the entire world of unskilled work at all exertional levels, less those that are language dependent, including representative occupations such as material handler (unskilled, heavy—94,300 jobs in California), packer (unskilled heavy—12,400 jobs), and production worker (unskilled, heavy—12,400 jobs).[4]

The second RFC was based on the limitations described in Dr. Evangeline Murillo's opinion. AR 295-97, 404. VE Chandler testified this person could do the same work as the first person. The

third RFC was based on the limitations described in the psychiatric review technique form completed in July 2008 by the state agency physician. AR 309, 405. VE Chandler testified this person could not work. The fourth RFC was based on the limitations described in the psychiatric review technique form completed in December 2007 by the state agency physician, although the limitations described by the ALJ were somewhat more severe than those in the form. AR 276, 405. VE Chandler testified this person could not work.

The fifth RFC was based on the limitations described by Dr. Orme. AR 327-28. This is the RFC that Plaintiff says the ALJ should have adopted. The person had a poor ability to relate to and interact with supervisors and co-workers; to understand, remember and carry out technical and/or complex instructions; to understand, remember, and carry out one or two step instructions; to deal with the public; to maintain attention and concentration for at least two hours; and to withstand the stress of an eight hour day. He had only a basic ability to handle funds. Accepting this RFC, VE Chandler testified this person could not work.

The sixth RFC was based on Plaintiff's hearing testimony. He said he could lift and carry ten pounds, sit ten minutes and stand ten minutes at a time, walk one block, and concentrate for five minutes. He needed one unscheduled one-hour break per work period. VE Chandler testified this person could not work.

**E.     The ALJ's Decision**

On May 14, 2010, the ALJ issued a decision finding that Plaintiff had not met his burden to show that he remained disabled after January 9, 2008. After considering each step in the sequential evaluation, the ALJ made the following findings:

1.     The most recent favorable medical decision finding that the claimant continued to be disabled is the determination dated August 14, 2001. This is known as the "comparison point decision" or CPD;

2.     At the time of the CPD, the claimant had the following medically determinable impairments: arthritis and depression. These impairments were found to prevent the claimant from engaging in substantial gainful activity on a sustained basis;

3. The medical evidence establishes that, as of January 9, 2008, the claimant had the following medically determinable impairments: alcohol dependence; alcohol induced mood disorder, depressed; and history of post-traumatic stress disorder (PTSD). These are the claimant's current impairments. The claimant no longer has a severe arthritic impairment;

4. Since January 9, 2008, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

5. Medical improvement occurred as of January 9, 2008;

6. As of January 9, 2008, the impairments present at the time of the CPD had decreased in medical severity to the point where the claimant had the residual functional capacity to perform a full range of work at all exertion levels but with the following nonexertional limitations: he is able to maintain attention and concentration and to carry out simply job instructions, he is able to relate and interact with coworkers, supervisors and the public, but is unable to carry out an extensive variety of technical and/or complex instructions;

7. Beginning on January 9, 2008, the claimant's mental impairment has continued to be severe, but his physical impairment is now non-severe;

8. Beginning on January 9, 2008, considering claimant's age, education, work experience and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy; and

9. Claimant's disability ended on January 9, 2008, and the claimant has not become disabled again since that date.

### III. DISCUSSION

On appeal, Plaintiff challenges the ALJ's decision in two respects: (1) the ALJ failed to point to any significant medical improvement that would support his finding that Plaintiff was no longer disabled; and (2) the ALJ failed to set forth legally sufficient reasons for rejecting the opinions of Dr. Orme, Plaintiff's treating physician.

**A.    Standard of Review**

To be disabled, a claimant must have a severe medical impairment capable of lasting at least twelve months, such that in light of his medical and vocational limitations he cannot engage in either his past work or in any work existing in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3). The claimant will be found disabled if he either satisfies all the elements of this definition or has a medical condition which is defined as disabling under the Commissioner's "listings." *See* 20 C.F.R. 404.1520. The Commissioner prescribes the order in which the ALJ considers these factors, and instructs the ALJ to end his inquiry as soon as he reaches a dispositive finding, either in that the claimant fails to satisfy an element of disability or in that he satisfies a listing. This sequential process is intended to help ensure that determinations are uniform, administratively efficient, neutral, and carefully documented. 20 C.F.R. 404.1594(b)(5); *see Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999) (sequential process embodies "presumptions about disabilities, job availability, and their interrelation" which "grow out of the need to administer a large benefits system efficiently").

For continuing disability claimants, this inquiry has eight steps. 20 C.F.R. 404.1594. First, if the claimant is doing gainful work, then he is not disabled (except at a redetermination hearing under Title XVI). Second, if he has a "listed" impairment, he is disabled by definition. Third, if the Commissioner fails to show medical improvement since the "comparison point decision" (the most recent finding that he was disabled), the claimant remains disabled. The same is true if the Commissioner fails to show that any improvement related to his ability to work. Fifth, the ALJ considers certain exceptions under which a claimant is not disabled despite or without regards to a lack of medical improvement. Sixth, if the claimant has no severe impairments meeting the durational requirement of twelve months, he is not disabled. Seventh, if he can do his past relevant work, he is not disabled. Finally, if there are jobs that the claimant can do that exist in "significant numbers" in the national economy, he is not disabled. 42 U.S.C. § 1382c (a)(3)(B). Otherwise, he satisfies all the statutory elements and he is disabled. The Commissioner has the burden to prove the availability of jobs in the economy and to produce sufficient evidence to rebut a presumption of continuing disability. Otherwise, the claimant has the burden of proof at each step. *See Terry v.*

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990); *Bellamy v. Sec'y of Health & Human Serv.,* 755 F.2d 1380, 1381 (9th Cir.1985).

Congress has provided a limited scope of judicial review of the Commissioner's finding that a claimant is not disabled. This Court must uphold the decision if the ALJ applied the proper legal standards and made findings supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla," *id.,* but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the Court may not substitute its judgment. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.1996).

**B.     Plaintiff's Failure to Summarize Evidence and Failure to Support Arguments**

As a preliminary matter, Plaintiff's brief departs in several ways from the requirements in the Court's scheduling order. The most striking of these is that it does not provide a summary of the relevant medical evidence. Sched.Order, ¶ 11(b). Instead of a summary, Plaintiff "stipulates that the ALJ fairly and accurately summarized the medical and non-medical evidence of record, except as specifically stated herein." The remainder of the brief merely adverts to some medical evidence.

In the Central District of California, a typical scheduling order actually invites briefs which "stipulate that the ALJ's decision fairly and accurately summarizes the material medical evidence and testimony of record" or which "state that the contentions of misstatement, mischaracterization, or omission are addressed in the argument in support of the Joint Stipulation." *See, e.g., Stephanie M. Lewis v. Carolyn W. Colvin,* No. 13-cv-00369-PSG-JEM (C.D. Cal., Mar. 8, 2013, Doc. 4). The Law Offices of Rohlfing & Kalagian frequently represents Social Security claimants in that district. Thus, the Court could see how counsel might reach the conclusion that the summary of evidence is an optional convention.

However, as Magistrate Judge Sandra M. Snyder once explained to a different attorney from the Rohlfing firm, the summary of medical evidence is a critical part of briefing. It helps inform the Court in the most useful fashion of the claimant's medical history. *Mort v. Astrue*, 1:07CV01478-AWI-SMS, 2008 WL 2705181 (E.D. Cal. July 8, 2008). This service is particularly important in light of the high caseload of this Court and the shortage of judicial resources. *Id.* Certainly, this Court's Scheduling Order requires counsel to distill pertinent evidence.

A second problem with Plaintiff's brief is that it is barely supported by evidence. Plaintiff's first argument—that the ALJ failed to show medical improvement—stands on little more than bare assertion, and is contradicted by facts that Plaintiff stipulates to. His second argument—that Dr. Orme's opinion was entitled to "controlling weight" because it was "not inconsistent with other substantial evidence of record"—suffers from the same deficiency. These shortcomings suggest a second reason why the Court requires a summary of the medical evidence: just as reading it familiarizes the Court with the record, writing it may help familiarize the parties with the record.

Although counsel practices in more than one district, the Court reminds Plaintiff's counsel that this district's orders must be complied with, there are reasons for these requirements, and briefs that do not substantially comply with these requirements may be stricken.

**C.   Medical Improvement**

As mentioned above, Plaintiff argues that the ALJ failed to show medical improvement. A medical improvement is "*any decrease* in the medical severity of [a claimant's] impairment(s)" since the time of the comparison decision. 42 U.S.C. § 423(f)(1) (emphasis added).

The ALJ adequately demonstrated Plaintiff's medical condition had improved. The primary difference between the CPD and the decision at issue is that at the time of the CPD, in addition to Plaintiff's subjective mental complaints, Plaintiff also had arthritis, a severe physical impairment. AR 28, 366-67. In the May 2010 decision at issue, the ALJ found, based on the x-ray evidence and Dr. Stoltz's examination report, that Plaintiff no longer suffered from any arthritic impairment. Plaintiff does not contest this finding. AR 17, 257-62, 323-26. Plaintiff had severe mental and physical impairments at the time of the CPD, and at the time of the decision at issue only had mental impairments. Thus, the ALJ met the first requirement as set forth in 42 U.S.C. §

11

423(f), that there has been medical improvement in Plaintiff's impairment or combination of impairments. *See* 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i) (defining medical improvement).

Aside from reiterating Plaintiff's testimony that he suffered from arthritis, Plaintiff's brief does not challenge the ALJ's finding that Plaintiff no longer has arthritis, and in fact concedes the accuracy of the ALJ's summary of the evidence. Thus, even in Plaintiff's view of the facts, by accepting that Plaintiff's arthritis had improved, the ALJ necessarily provided substantial evidence of "any decrease" in the severity of Plaintiff's impairments.

### D. The ALJ's Evaluation of Medical Opinion Testimony

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Id.* (citing *Winans v. Bowen*, F.2d 643, 647 (9th Cir. 1987)). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate" reasons supported by substantial evidence in the record for doing so. *Id.* (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Id.* (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). As is the case with the opinion of a treating physician, the Commission must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Id.* (citing *Pitzer*, 908 F.2d at 506). And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a

treating physician, or any other medical source, if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir.1999).

Plaintiff argues the ALJ did not attach appropriate weight to the opinion of Plaintiff's treating physician, Dr. Orme. Dr. Orme offered an opinion of Plaintiff's abilities which amounted to a finding of disability. The ALJ gave "little weight" to this opinion, and instead favored the opinion of Dr. Michiel, an examining physician. Dr. Orme's opinions were contradicted by those of Dr.'s Michiel, Middleton and Murillo. Therefore, the ALJ could reject it for "specific and legitimate reasons" supported by substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007). The factors that the ALJ could consider included (1) the examining relationship; (2) the treatment relationship, including (a) the length of the treatment relationship or frequency of examination, and the (b) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that support or contradict a medical opinion. 28 C.F.R. § 404.1527(d).

The ALJ provided specific and legitimate reasons to discount Dr. Orme's opinions. First, a medical opinion may be disregarded to the extent that it is premised on the claimant's discredited complaints. *Morgan v. Comm'r of the Soc. Sec. Admin*., 169 F.3d 595, 602 (9th Cir.1999). Dr. Orme relied in part on Plaintiff's subjective reports, and therefore, Plaintiff's credibility was highly relevant in evaluating Dr. Orme's conclusions.

The ALJ found that Plaintiff's credibility was "rather dismal." For example, Dr. Stoltz observed a "somewhat exaggerated" limp. AR 261. The ALJ also noted inconsistencies in

Plaintiff's descriptions of his activities of daily living. Plaintiff told Dr. Michiel that he could take care of his own personal hygiene, shop, cook, and do household chores. At the hearing, he denied shopping, then acknowledged shopping once a month. By contrast, Plaintiff's daughter said she took Plaintiff to the store three times a week. The daughter's statement that Plaintiff could pay attention for three to five minutes was also inconsistent with the fact that Plaintiff paid attention and responded appropriately during the 40-minute hearing.

The ALJ also discussed at length the inconsistencies in how Plaintiff described his alcohol use and related criminal history. At the December 2007 examination with Dr. Steven Stoltz, Plaintiff denied alcohol use entirely. AR 258. At the hearing in March 2010, he said the same thing to the ALJ. AR 393. But evidence of Plaintiff's alcohol problem appears throughout the record. As early as 1993, a consultative examiner indicated a suspicion of an alcohol problem, AR 192, as did the physical examiner in June 2001, whom he told he drank four to five beers a day, including a few beers before the examination, AR 246, 249, and the psychological examiner in June 2001, who noted that Plaintiff was drinking two to three beers a day and that his wife was concerned. AR 250-53. In November 2007, at his psychiatric evaluation with Dr. Michiel, he said he "drinks until drunk." AR 254-56. When he testified before a state agency hearing officer in September 2008, he smelled of alcohol and admitted that he had a few beers before the hearing. At the 2010 hearing, Plaintiff denied any criminal history, but he told Dr. Michiel that he was once arrested for a DUI. AR 255

Dr. Orme's opinion is also unreliable in light of the 28 C.F.R. § 404.1527(d) factors, listed above, used to evaluate a doctor's opinion. For example, Dr. Orme only treated Plaintiff for eight months. Dr. Orme's medical opinion reflected his lack of familiarity with Plaintiff's longitudinal medical history as evidenced by the failure to discuss Plaintiff's alcohol-related problems. The inconsistencies in Plaintiff's testimony and Dr. Orme's unfamiliarity with Plaintiff's alcohol problems go to the heart of Dr. Orme's medical opinions. Dr. Orme's opinions are not entirely reliable. Moreover, Dr. Orme's opinions were contradicted by the findings of consultative examiner Dr. Michiel and two state agency consultants.

By contrast, Dr. Michiel had the opportunity to interview, observe and examine Plaintiff, and was aware of Plaintiff's alcohol problems. While Dr. Orme practiced family medicine, Dr. Michiel

was a board-certified psychiatrist, a specialist in the subject matter of his opinion. Dr. Michiel observed a GAF score reflecting only mild persistent symptoms or mild difficulty in functioning. He considered Plaintiff's demeanor, his activities of daily living, his intellectual functioning, and his past psychiatric history. Accordingly, there was substantial evidence supporting the ALJ's decision to rely on Dr. Michiel's opinion over that of Dr. Orme.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Sinh Danmgam.

IT IS SO ORDERED.

Dated: **June 13, 2013**          /s/ Barbara A. McAuliffe
                                   UNITED STATES MAGISTRATE JUDGE